IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of D & N ELECTRIC COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, LIBERTY MUTUAL INSURANCE COMPANY and WALBRIDGE ALDINGER COMPANY,<br><br>        Defendants. | CIVIL ACTION FILE NO.<br><br>CV412-50<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff UNITED STATES OF AMERICA for the use and benefit of D & N ELECTRIC COMPANY hereby files its Complaint against Defendants, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, LIBERTY MUTUAL INSURANCE COMPANY and WALBRIDGE ALDINGER COMPANY and states as follows:

### CERTIFICATE OF INTERESTED PARTIES

(1) The undersigned counsel of record for D & N Electric Company certifies that the following is a full and complete list of the parties in this action:

| *Name:* | *Identification & Relationship:* |
|---|---|
| D & N Electric Company | Use Plaintiff |
| Travelers Casualty and Surety Company of America | Defendant |
| Liberty Mutual Insurance Company | Defendant |
| Walbridge Aldinger Company | Defendant |

(2) The undersigned further certifies that the following is a full and complete list of officers, directors, or trustees of D & N Electric Company:

| *Name:* | *Position:* |
|---|---|
| Robert L. Nix | Chief Executive Officer |
| Matthew G. Armstrong | President |
| Larry M. Harper | Executive Vice President |
| Robert H. Starr | Vice President |
| Michael W. Munroe | Secretary/Treasurer |
| Robert L. Nix | Chairman |
| Matthew G. Armstrong | Director |
| Michael W. Munroe | Director |

## PARTIES, JURISDICTION, AND VENUE

1. D & N Electric Company ("D & N") is a corporation duly incorporated under the laws of the State of Georgia with its principal place of business in Georgia.

2. Defendant TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA ("Travelers") is a foreign corporation incorporated under the laws of the State of Connecticut. Defendant Travelers conducts business in Georgia, and is subject to the jurisdiction of this Court. Travelers may be served by serving its registered agent for service of process in Georgia, Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Gwinnett County, Georgia 30092.

3. Defendant LIBERTY MUTUAL INSURANCE COMPANY ("Liberty") is a foreign corporation incorporated under the laws of the State of Massachusetts. Defendant Liberty conducts business in Georgia, and is subject to the jurisdiction of this Court. Liberty

2

may be served by serving its registered agent for service of process in Georgia, Corporation Service Company, 40 Technology Parkway South, #300, Norcross, Gwinnett County, Georgia 30092.

4. Defendant WALBRIDGE ALDINGER COMPANY ("Walbridge") is a corporation incorporated under the laws of the State of Michigan with its principal place of business in Michigan. Defendant Walbridge has transacted business in Georgia and in the Southern District of Georgia and is subject to the jurisdiction of this Court. Defendant Walbridge may be served with a Summons and a copy of this Complaint through its registered agent for service of process in Georgia, CT Corporation System, 1201 Peachtree St. NE, Atlanta, Fulton County, Georgia 30361.

5. The Court has subject matter jurisdiction pursuant to the Miller Act, 40 U.S.C. §3133, since this is the district in which the contract was performed and in which the project was located. The Court also has diversity jurisdiction pursuant to 28 U.S.C. §1332 since D & N is a corporation incorporated in the state of Georgia with its principal place of business in Georgia and all of the Defendants are incorporated in and have their principal places of business in states other than Georgia. The amount in controversy, exclusive of interest and costs, is in excess of $75,000.00.

6. Venue is proper in this District pursuant to 40 U.S.C. §3133 since the work performed by D & N for which it seeks to recover under the Miller Act was performed at Ft. Stewart, Georgia, which is located in the Southern District of Georgia. In addition, venue is proper under 28 U.S.C. §1391(b) since a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Georgia.

## BACKGROUND FACTS

7. Walbridge entered into a contract (the "Prime Contract") with the United States Army Engineer District Savannah (the "Corps of Engineers") for the construction of a project known as 5th Infantry Brigade Combat Team Complex, Contract No. W912HN-07-D-0054, Task Order 0006, located at Ft. Stewart, Georgia (the "Project").

8. Walbridge, as principal, and Travelers and Liberty, as sureties, executed a Payment Bond for the Project, Bond No. 015-029-002/105214423, (the "Payment Bond") in the amount of $149,669,000.00. Such Payment Bond, a true and correct copy of which is attached hereto as Exhibit "A", is incorporated herein by reference.

9. D & N and Walbridge entered into a subcontract agreement dated September 21, 2009 (the "Subcontract") for certain labor, materials, work and services (hereinafter referred to as the "Work") for the installation of electrical and fire alarm systems for the Project. The Subcontract is incorporated herein by reference. This action, though, is an action under the Payment Bond and is not an action under the Subcontract.

10. Walbridge had express obligations under the Subcontract, as modified by the Addendum to the Subcontract, including, but not limited to, the following:

    a. to have a Project Schedule agreed to by both D & N and Walbridge;

    b. to grant adjustments to the Project Schedule for time extensions to which D & N was entitled;

    c. to act in accordance with time being of the essence;

    d. to reasonably cooperate with D & N so that D & N could meet the dates in the Project Schedule;

4

e. to provide a Project Schedule and any modification to such Schedule so as to allow D & N a reasonable time to complete its Work;

f. If D & N was required to perform extra work or changes to the Subcontract, to provide a written change order for such extra work or changes in a reasonable time;

g. to grant D & N an equitable adjustment to the Subcontract price and time for changes and extra work;

h. to grant D & N an equitable adjustment in the Subcontract time and price as a result of material delays and impacts caused by the negligence or intentional interference of Walbridge or any of Walbridge's other subcontractors or caused by changes to the work initiated by Walbridge;

i. where Walbridge directed D & N to add labor, expedite deliveries, work overtime and/or a second shift and D & N was not in default, to pay D & N for actual costs incurred by D & N to furnish additional labor and to expedite deliveries of materials and equipment, and the actual premium costs over the regular rates;

j. to act reasonably in taking action and making decisions;

k. to pay for equitable adjustments to which D & N was entitled under the Subcontract, as modified by the Addendum;

l. to pay for the Subcontract Balance, changes and extra work; and

m. to provide D & N, prior to backcharging for any claim or services or clean-up, a 24 hr. written notice of such services or claim and provide D & N with a reasonable opportunity to remedy any claimed problem prior to Contractor being able to charge Subcontractor for such claim or services.

11. Walbridge also had implied obligations under the Subcontract, including, but not limited to, the following:

    a. to cooperate with D & N and to act in good faith; and

    b. not to delay, hinder or interfere with the performance of D & N's work.

12. To the extent that Walbridge had rights and remedies for time extensions and additional compensation for delays, impacts and changes against the Owner under the Prime Contract, D & N also has such rights and remedies for time extension and additional compensation from Walbridge by virtue of Paragraph 1 of the Addendum to the Subcontract. Such rights and remedies are in addition to all rights and remedies that D & N has under the Subcontract and by applicable law.

13. Walbridge breached its express and implied contractual obligations under the Subcontract by its acts, omissions and conduct and/or the acts, omissions and conducts of its employees, officers, agents or persons and entities for which it is responsible, including, but not limited to the following acts, omissions and/or conduct:

    a. requiring and imposing a Project Schedule that was not agreed to by D & N;

    b. failing to grant adjustments to the Project Schedule for time extensions to which D & N was entitled;

    c. failing to perform its work and to have its other subcontractors perform their work so that work of preceding trades to D & N would be performed in accordance with the agreed upon Schedule;

    d. failing to act in accordance with time being of the essence;

    e. failing to reasonably cooperate with D & N so that D & N could meet the dates in the Project Schedule;

f.  failing to provide a Project Schedule and any modification to such Schedule so as to allow D & N a reasonable time to complete its Work;

g.  requiring D & N to perform extra work and changes to the Subcontract but failing to provide a written change order for such extra work and changes in a reasonable time;

h.  failing to grant D & N an equitable adjustment to the Subcontract price and time for changes and extra work;

i.  failing to grant D & N an equitable adjustment in the Subcontract time and price as a result of material delays and impacts caused by the negligence or intentional interference of Walbridge or any of Walbridge's other subcontractors or caused by changes to the work initiated by Walbridge;

j.  directing D & N to add labor, expedite deliveries, work overtime and/or a second shift when D & N was not in default but failing and refusing to pay D & N for actual costs incurred by D & N to furnish additional labor and to expedite deliveries of materials and equipment, and the actual premium costs over the regular rates;

k.  failing to act reasonably in taking action and making decisions;

l.  failing to pay D & N for equitable adjustments to which D & N was entitled under the Subcontract as modified by the Addendum;

m.  failing to pay D & N for impact and delays caused by changes to the Subcontract initiated by Walbridge;

n.  failing to pay D & N for its Subcontract Balance and for changes and extra work;

o. failing to provide D & N, prior to backcharging for any claim or services or clean-up, a 24 hr. written notice of such services or claim and provide D & N with a reasonable opportunity to remedy any claimed problem prior to Contractor being able to charge Subcontractor for such claim or services.

p. failing to cooperate with D & N and to act in good faith; and

q. delaying, hindering and interfering with the performance of D & N's work.

14. Walbridge changed the Subcontract, but failed to issue Change Orders as required by the Subcontract and failed to equitably adjust the Subcontract Price for such changes and to pay D & N for such changes.

15. Walbridge and/or its other subcontractors intentionally interfered with the work of D & N and Walbridge was negligent in its scheduling, supervision, administration and management of the Project, causing material delay and impact to D & N. Walbridge also initiated changes to the Subcontract that materially delayed and impacted D & N. Such changes included, but were not limited to, changes in scope, changes in design, changes in the schedule, changes in the manner and sequence of D & N's work and the work of Walbridge and its other subcontractors. Walbridge was required by the Subcontract to equitably adjust the Subcontract Price for such negligence, intentional interference or changes to the Subcontract, but Walbridge did not equitably adjust the Subcontract for such negligence, intentional interference or changes to the Subcontract.

16. Walbridge issued Change Orders for backcharges without giving D & N prior written notice as required by the Subcontract, which prejudiced D & N in investigating the claimed condition and costs prior to corrective work being performed and in having an opportunity to minimize corrective costs if such investigation revealed that D & N was the cause

of the condition requiring the corrective work.

17. Despite requests by D & N for supporting documentation for Walbridge's backcharges, Walbridge also refused to provide D & N with proper and complete documentation to support the claimed backcharges.

18. Walbridge required that D & N sign Change Order Nos. 17 through 20 that contained a total of $38,988.48 of backcharges before Walbridge would issue and sign Change Order No. 21 for MOD 18 – Mass Notification System, although Walbridge had not provided prior written notice of backcharges as required by the Subcontract and although MOD 18 was approved by the Corps of Engineers as a change to the Prime Contract, although Walbridge had acknowledged and approved MOD 18 as a change to the Subcontract, and although Walbridge had acknowledged and approved $197,873.33 as the amount for D & N for such change. Because Walbridge was refusing to pay for a change, which it had acknowledged was due to D & N for work performed, unless D & N allowed backcharges of Walbridge, D & N was forced under economic duress to sign Change Order Nos. 17 – 20 for such backcharges although such backcharges were not proper or supported. Walbridge engaged in unlawful conduct by violating the requirements of the Subcontract for prior notice of backcharges and then refusing to pay D & N for acknowledged and approved changed work unless D & N signed Change Orders for Walbridge's backcharges contained in Change Order Nos. 17 - 20. Therefore, such Change Orders should be voided, and D & N should be allowed the full amount of $197,873.33 for MOD 18 for the Mass Notification System, which would result in an increase in the unpaid Subcontract Balance by $38,988.48.

19. Walbridge intentionally, recklessly or negligently made material misrepresentations and false statements to D & N as to 1) the correctness of Walbridge's

backcharges and 2) D & N's right to challenge the backcharges later. Walbridge represented to D & N that a meeting would be held by Walbridge with D & N and Walbridge's other subcontractors where each subcontractor would discuss and justify its backcharges through Walbridge against D & N and D & N would discuss and justify its backcharges to Walbridge due to damage or costs caused by other subcontractors to Walbridge. Such representations and statements were false in that 1) Walbridge submitted inflated invoices for its painting subcontractor rather than invoices that had originally been presented by the painting subcontractor to Walbridge, and 2) Walbridge never scheduled or held the meeting with the subcontractors to discuss backcharges of other subcontractors or charges that D & N had against Walbridge for acts and/or omissions of Walbridge's other subcontractors and did not intend to allow D & N to challenge the invoices of the other subcontractors. Walbridge intended D & N to rely upon its statements as set forth above, and D & N reasonably relied upon such invoices by signing Change Orders. D & N has been damaged by such misrepresentations and false statements because its Subcontract Price and unpaid Subcontract Balance have wrongfully been reduced. Therefore, Change Orders for Walbridge's backcharges should be voided, and D & N should be allowed the full amount of $82,245.35 for such Change Orders, which would result in an increase in the unpaid Subcontract Balance by $82,245.35, or $43,256.87 if the increase of $38,988.48 is allowed for Change Order Nos. 17 – 20 as set forth in paragraphs 16 - 18 of the Complaint.

20. As a result of such improper and wrongful backcharges and such misrepresentations and false statements by Walbridge, D & N's Subcontract Price for the original Subcontract price and Change Orders 1 through 21 was wrongfully reduced by $82,245.35, which wrongfully reduced the unpaid Subcontract Balance for the original

Subcontract price and Change Orders 1 through 21 from $87,858.03 to $5,612.68.

21. As a direct and proximate result of Walbridge's acts, omissions, conduct and breaches of the Subcontract and breaches of Walbridge's express and implied obligations under the Subcontract, D & N incurred additional costs in performing work and furnishing labor, material, tools and equipment for work for the Project and in prosecution of the work under the Prime Contract. Such additional costs with overhead and profit on such costs total at least $12,932,038.90, plus D & N has incurred the amount of $82,245.35 for improper backcharges of Walbridge, for a total principal amount of damages of $13,014,284.25. The above amount of $12,932,038.90 includes, but is not limited to, additional labor costs, additional rental equipment costs, extended duration costs, overhead and profit on such costs, change orders not paid and unpaid Subcontract Balance.

22. All of D & N's work for the Project has been accepted by Walbridge and the Owner.

23. To date, D & N has not been paid at least $13,014,284.25 for its work for the Project, which amount is past due and presently owing under the Subcontract.

## COUNT ONE
## ACTION ON PAYMENT BOND AND UNDER THE MILLER ACT

24. The allegations of Paragraphs 1 through 23 are incorporated herein by reference as if all such paragraphs were fully stated herein.

25. Travelers and Liberty, as sureties, and Walbridge, as principal, executed the Payment Bond for the Project. Such Payment Bond, a true and correct copy of which is attached hereto as Exhibit "A", is incorporated herein by reference.

26. Such Payment Bond was issued and executed by Travelers and Liberty, as sureties, and Walbridge, as principal, pursuant to the Miller Act, 40 U.S.C. §3131, *et. seq.* (the

11

"Miller Act").

27. Pursuant to the terms of the Payment Bond, Travelers and Liberty and Walbridge agreed, jointly and severally, to promptly make payment to all persons having a direct relationship with the Principal for furnishing labor, material or both in the prosecution of the work provided for in the Prime Contract and any authorized modifications thereto.

28. Pursuant to the Miller Act, Travelers, Liberty and Walbridge are jointly and severally liable to pay every person that has furnished labor or material in carrying out work provided for in the Prime Contract for the amount due that has not been paid in full within ninety (90) days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made.

29. D & N has a direct contractual relationship with Walbridge to furnish labor, materials, work and services in prosecution of work provided for in the Prime Contract for the Project.

30. D & N furnished labor and material in carrying out work provided for in the Prime Contract, and more than ninety (90) days has expired since the date that D & N performed the last labor or supplied the last materials for which the claim is made.

31. D & N has performed in accordance with the provisions of the Subcontract between D & N and Walbridge but has not been paid by Walbridge the principal amount due of at least $13,014,284.25.

32. D & N has also not been paid by Travelers or Liberty any of the amounts due to D & N.

33. Walbridge, Travelers and Liberty have breached the terms of the Payment Bond and their obligations under the Miller Act by failing to pay D & N for labor and work performed

and materials supplied by D & N to Walbridge for the Project.

34. As a result of such nonpayment and breaches by Defendants Walbridge, Travelers and Liberty, D & N has been damaged in the principal amount of at least $13,014,284.25.

35. Despite demand for payment, Travelers, Liberty and Walbridge have not paid the sum due D & N under the Payment Bond.

36. This action under the Payment Bond and the Miller Act has been filed within one year of the date of the last labor performed or materials supplied to the Project by D & N.

37. All conditions precedent to Plaintiff being entitled to recover the amount sought herein have been met, have occurred, or have otherwise been waived, excused or frustrated.

38. Plaintiff is entitled to interest on the amount due under the Payment Bond at the rate of seven percent (7%) per year from the date the amount was due until the date the amount is paid.

39. Therefore, Plaintiff is entitled to recover from Walbridge, Travelers and Liberty, jointly and severally, under the Payment Bond and 40 U.S.C. §3133 in the principal amount of at least $13,014,284.25, or such other amount to be proven at trial, plus interest on the amount due under the Payment Bond at the rate of seven percent (7%) per year from the date the amount was due until the date the amount is paid, plus costs of this action.

WHEREFORE, Plaintiff respectfully prays that this Court grant it the following relief:

(a) Judgment in favor of D & N against Defendants Travelers, Liberty and Walbridge, jointly and severally, under the Payment Bond and the Miller Act in the principal amount of at least $13,014,284.25 or such other amount to be proven at trial, plus interest on the amount due under the Payment Bond and the Miller

Act at the rate of seven percent (7%) per year from the date the amount was due until the date the amount is paid, plus costs of this action.

    (b)    That all issues triable to a jury be tried to a jury; and

    (c)    That the Court grant such further and other relief as this Court deems just and proper.

Respectfully submitted, this 13th day of February, 2012.

_____
David H. Johnson
Georgia Bar No. 393250
Attorney for Plaintiff
UNITED STATES for the use and benefit of D & N
ELECTRIC COMPANY
McCorkle & Johnson, LLP
319 Tattnall St.
Savannah, GA 31401
912-232-6000 telephone
912-232-4080 facsimile
dhj@mccorklejohnson.com

  



Bond No. 015-029-002 / 105214423

| PAYMENT BOND (See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) June 1, 2009 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| Walbridge Aldinger Company<br>777 Woodward Avenue, Suite 300<br>Detroit   MI   48226-3529 | ☐ INDIVIDUAL   ☐ PARTNERSHIP<br>☐ JOINT VENTURE   ☒ CORPORATION<br>STATE OF INCORPORATION<br>MI |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND |
|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA<br>One Tower Square, Hartford, CT 06183-6014 | 149 | 669 | 000 | 00 |

| LIBERTY MUTUAL INSURANCE COMPANY<br>1211 Avenue of the Americas, New York, NY | Document Reviewed & Approved<br>Legal Sufficiency<br>Technical Specs. & Drawings Not Reviewed.<br>5/22/2009 | CONTRACT DATE | CONTRACT NO.<br>CONTRACT #W912HN-07-D-0054, TASK ORDER REQUEST #W912HN-07-X-1318, 6TH INFANTRY BRIGADE COMBAT TEAM COMPLEX, FT. STEWART, GA |

Atty.   (Date)
Office of Counsel

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| Walbridge Aldinger Company | | | PRINCIPAL | | | |
|---|---|---|---|---|---|---|
| SIGNATURE(S) | 1. *(signature)* (Seal) | 2. | | 3. | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Vincent DeAngelis<br>VP/CFO | 2. | | 3. | | |

| INDIVIDUAL SURETY(IES) | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. | (Seal) | 2. | (Seal) |
| NAME(S) (Typed) | 1. | | 2. | |

| | | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | Travelers Casualty and Surety Company of America<br>One Tower Square, Hartford, CT 06183-6014 | STATE OF INC.<br>CT | LIABILITY LIMIT<br>$ 89,601,400.00 | Corporate Seal |
| | SIGNATURE(S) | 1. *(signature)* | | 2. | |
| | NAME(S) & TITLE(S) (Typed) | 1. Diana L. Parker   Attorney-in-Fact | | 2. | |



AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.222(c)

### CORPORATE SURETY(IES) (Continued)

| | | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | Liberty Mutual Insurance Company<br>1211 Avenue of the Americas, New York, NY 10036 | MA | $ 59,867,600.00 | Corporate Seal |
| | SIGNATURE(S) | 1. *[signature]* | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Diane L. Rarker<br>Attorney-in-Fact | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT<br>$ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT<br>$ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT<br>$ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT<br>$ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT<br>$ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

### INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal", on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER**



# POWER OF ATTORNEY

| | |
|---|---|
| Farmington Casualty Company | St. Paul Guardian Insurance Company |
| Fidelity and Guaranty Insurance Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company |
| Seaboard Surety Company | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |

Attorney-In Fact No. 219657   Certificate No. 002863958

**KNOW ALL MEN BY THESE PRESENTS:** That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, that Farmington Casualty Company, Travelers Casualty and Surety Company, and Travelers Casualty and Surety Company of America are corporations duly organized under the laws of the State of Connecticut, that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Diana L. Parker, and Karen C. Bowling

of the City of __Columbia__, State of __Maryland__, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**WITNESS WHEREOF,** the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this __18th__ day of __February__, __2008__.

| | |
|---|---|
| Farmington Casualty Company | St. Paul Guardian Insurance Company |
| Fidelity and Guaranty Insurance Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company |
| Seaboard Surety Company | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |

State of Connecticut
City of Hartford ss.

By: _____
George W. Thompson, Senior Vice President

On this the __18th__ day of __February__, __2008__, before me personally appeared George W. Thompson, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

Witness Whereof, I hereunto set my hand and official seal.
Commission expires the 30th day of June, 2011.

_____
Marie C. Tetreault, Notary Public

58440-5-07 Printed in U.S.A.

**WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER**

**WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER**

This Power of Attorney is granted under and the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

RESOLVED, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

FURTHER RESOLVED, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

FURTHER RESOLVED, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

FURTHER RESOLVED, that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

I, Kori M. Johanson, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 1st day of June, 20__.

Kori M. Johanson, Assistant Secretary

        

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

**WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER**

2484838

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

**LIBERTY MUTUAL INSURANCE COMPANY**
**BOSTON, MASSACHUSETTS**
**POWER OF ATTORNEY**

KNOW ALL PERSONS BY THESE PRESENTS: That Liberty Mutual Insurance Company (the "Company"), a Massachusetts stock insurance company, pursuant to and by authority of the By-law and Authorization hereinafter set forth, does hereby name, constitute and appoint

**RICHARD G. AVERY, DIANA L. PARKER, KAREN C. BOWLING, ALL OF THE CITY OF BERWYN, STATE OF PENNSYLVANIA**..........................................................................................................................................................

, each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations in the penal sum not exceeding **TWO HUNDRED FIFTY MILLION AND 00/100**************************** DOLLARS ($ **250,000,000.00******* ) each, and the execution of such undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company in their own proper persons.

That this power is made and executed pursuant to and by authority of the following By-law and Authorization:

ARTICLE XIII - Execution of Contracts: Section 5. Surety Bonds and Undertakings.
Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

By the following instrument the chairman or the president has authorized the officer or other official named therein to appoint attorneys-in-fact:

Pursuant to Article XIII, Section 5 of the By-Laws, Garnet W. Elliott, Assistant Secretary of Liberty Mutual Insurance Company, is hereby authorized to appoint such attorneys-in-fact as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

That the By-law and the Authorization set forth above are true copies thereof and are now in full force and effect.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Company and the corporate seal of Liberty Mutual Insurance Company has been affixed thereto in Plymouth Meeting, Pennsylvania this __10th__ day of __February__, __2009__.



**LIBERTY MUTUAL INSURANCE COMPANY**

By_____
Garnet W. Elliott, Assistant Secretary

COMMONWEALTH OF PENNSYLVANIA   ss
COUNTY OF MONTGOMERY

On this __10th__ day of __February__, __2009__, before me, a Notary Public, personally came **Garnet W. Elliott**, to me known, and acknowledged that he is an Assistant Secretary of Liberty Mutual Insurance Company; that he knows the seal of said corporation; and that he executed the above Power of Attorney and affixed the corporate seal of Liberty Mutual Insurance Company thereto with the authority and at the direction of said corporation.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at Plymouth Meeting, Pennsylvania, on the day and year first above written.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Plymouth Twp., Montgomery County
My Commission Expires Mar. 28, 2009
Member, Pennsylvania Association of Notaries

By_____
Teresa Pastella, Notary Public

**CERTIFICATE**

I, the undersigned, Assistant Secretary of Liberty Mutual Insurance Company, do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy, is in full force and effect on the date of this certificate; and I do further certify that the officer or official who executed the said power of attorney is an Assistant Secretary specially authorized by the chairman or the president to appoint attorneys-in-fact as provided in Article XIII, Section 5 of the By-laws of Liberty Mutual Insurance Company.

This certificate and the above power of attorney may be signed by facsimile or mechanically reproduced signatures under and by authority of the following vote of the board of directors of Liberty Mutual Insurance Company at a meeting duly called and held on the 12th day of March, 1980.

VOTED that the facsimile or mechanically reproduced signature of any assistant secretary of the company, wherever appearing upon a certified copy of any power of attorney issued by the company in connection with surety bonds, shall be valid and binding upon the company with the same force and effect as though manually affixed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed the corporate seal of the said company, this ___1st___ day of _____

By_____
David M. Carey, Assistant Secretary